UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JIMA BROWN,

Petitioner,

v.

9:25-CV-0544 (LEK)

JULIE WOLCOTT,

Respondent.

---

APPEARANCES: OF COUNSEL:

JIMA BROWN
Petitioner, pro se
21-B-1621
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. LETITIA JAMES
Attorney for Respondent
New York State Attorney General
28 Liberty Street
New York, New York 10005

PRISCILLA I. STEWARD, ESQ.
Ass't Attorney General

LAWRENCE E. KAHN
Senior United States District Judge

**DECISION AND ORDER**

## I. INTRODUCTION

Petitioner Jima Brown seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet."). Respondent opposed the Petition and filed pertinent records from the state court proceedings. Dkt. No. 4, Answer; Dkt. No. 4-1, Memorandum of Law in Opposition ("Resp. MOL"); Dkt. Nos. 7-1, 7-2, 7-3, State Court Records ("SR"); Dkt. No. 7 at 1–124, State Court Pretrial Transcript ("PT"); Dkt. No. 7 at 125–783, State Court Trial

Transcript ("T."); Dkt. No. 7 at 784–807, Sentencing Transcript ("S.").[1] On October 8, 2025, petitioner filed a reply, which he later amended. Dkt. No. 10, Reply; Dkt. No. 11, Amended Reply. For the reasons which follow, the Petition is denied and dismissed.

## II. RELEVANT BACKGROUND

### A. The Indictment

On July 11, 2019, an Onondaga County grand jury indicted petitioner, charging him with the following crimes: Rape in the First Degree (Penal Law § 130.35(1)) and Criminal Obstruction of Breathing or Blood Circulation (Penal Law § 121.11). SR at 181. The indictment accused petitioner of "engag[ing] in sexual intercourse with Jane Doe, a female whose true identity is known to the Grand Jury, by forcible compulsion" on or about June 7, 2028. SR at 181.

### B. Petitioner's Identification and Arrest

On or about July 23, 2018, a police detective in Tampa, Florida began investigating a report of sexual assault against a woman by an unknown Lyft driver, later found out to be petitioner. SR at 442–43. On September 28, 2018, the Florida police obtained a search warrant to secure a buccal swab from petitioner in connection with the sexual assault investigation. SR at 444–45. On October 1, 2018, the police presented petitioner with the warrant and obtained the buccal swab. SR at 444–45.

By November 19, 2018, petitioner's DNA profile was uploaded to the combined DNA index system ("CODIS"), which is a nationally accessible DNA database. SR at 447–48. On

[1] With the exception of the State Court Record ("SR"), the Trial Transcript ("T."), and the Sentencing Transcript ("S."), citations to all parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system. Citations to the State Court Record ("SR") reference the Bates-stamp at the bottom of each page, and citations to the Trial Transcript ("T.") and Sentencing Transcript ("S.") reference the transcript page in the top-right corner of each page, with the first page of the trial transcript beginning on CM/ECF page 125 and the first page of the sentencing transcript beginning on CM/ECF page 784, for example.

November 26, 2018, the police learned that petitioner was not a contributor to the specimen collected from the Florida sexual assault victim. SR at 445. That same day, the Onondaga County forensic lab was alerted that petitioner's DNA profile matched samples taken from the Jane Doe victim's rape kit in this case. SR at 451. On November 29, 2018, the Florida investigation was administratively closed. SR at 446.

On or about May 13, 2019, law enforcement officials from the Syracuse Police Department traveled to Tampa, Florida and convened with other law enforcement officials to locate and speak with petitioner. SR at 215. Ultimately, petitioner was escorted to the Hillsborough County Sheriff's Office in Tampa, Florida, where he was questioned before being transported to the Hillsborough County jail. SR at 215–16. That same day, Onondaga County Court Judge McMahon signed a warrant for petitioner's arrest in connection with this case. SR at 198, 216.

On June 7, 2019, petitioner was ordered to make himself available to provide a saliva sample to an investigator of the Onondaga County District Attorney's Office. SR at 207. On June 14, 2019, petitioner was arrested on the charge of Rape in the First Degree. SR at 199, 258.

**C. Pretrial Matters**

On August 14, 2019, the People announced their readiness for trial during a pretrial conference. Dkt. No. 7 at 7–8. On September 4, 2019, petitioner's trial counsel filed a motion seeking to inspect the grand jury proceedings, suppress evidence, and other pretrial relief and served the People with a Demand for Exculpatory Information and a Demand for a Bill of Particulars. SR at 218–51. On September 19, 2019, the People responded to trial

counsel's requests, produced discovery, and announced the People's readiness for trial. SR at 252–57.

On January 18, 2020, the People filed a Certificate of Compliance pursuant to CPL § 245.50(1). SR at 330. On September 8, 2020, petitioner's trial counsel served the People with a supplemental discovery demand seeking the disciplinary records of every law enforcement official listed anywhere in discovery. SR at 338. The People opposed the request on the grounds that CPL § 245 did not require such a disclosure. SR at 340–41. On October 7, 2020, the parties appeared before the trial court, which found that the repeal of CPL § 50-a affords the People additional access to law enforcement disciplinary records and that CPL § 245 requires the People to provide available disciplinary records that could be used for impeachment. PT at 63–66. The trial court further stated that the People should submit disciplinary records to the court for in camera review before disclosing if there is an issue regarding whether those records may qualify as discoverable. PT at 65–66.

On December 16, 2020, the trial court held a video conference to discuss issues with scheduling the trial in the midst of the pandemic-related shut-down. PT at 73–78.

On June 11, 2021, petitioner's trial counsel filed a motion seeking to (1) strike the Certificate of Compliance as defective, improper, and illusory; (2) dismiss the indictment on speedy trial grounds pursuant to CPL § 30.30(5); and (3) preclude the testimony of any law enforcement witness or civilian witness with a criminal record. SR at 342–53. On June 14, 2021, the People filed a new Certificate of Compliance, pursuant to CPL § 245.50(1), after providing law enforcement disciplinary records as requested by petitioner's trial counsel, and opposed trial counsel's motion. SR at 384–97.

Prior to the start of trial, the trial judge denied the motion filed by petitioner's trial counsel related to trial readiness and found that the Certificate of Compliance was not illusory and was presented in good faith. T. at 1–8.

**D. The Trial**

On June 14, 2021, petitioner's jury trial commenced in Onondaga County Supreme Court before the Honorable Gordon J. Cuffy. T. at 1.

The victim testified that on the evening of June 6 into the morning of June 7, 2008, she was with her sister at a bar in Syracuse, New York. T. at 309–10. The victim further testified that they consumed a few alcoholic beverages, but she was not intoxicated. T. at 310–11. After the victim and her sister got into an argument, at some point around 1:00 a.m., the victim left the bar on foot and began walking toward her residence. T. at 311–13.[2]

The victim testified that she was sexually assaulted while walking home from the bar. T. at 310–37, 391–93. After the attack, the victim was taken to a hospital where a rape kit was administered. T. at 338–39, 424–46.

The sexual assault nurse examiner, Maureen Garvey, testified that she observed scrapes, bruises, and redness on different parts of the victim's body and small tears to the lower portion of the victim's vagina that appeared to be new. T. at 424–25, 429–30. The victim also suffered cuts and bruises on various parts of her body, and she was covered in a rash from poison oak. T at 339–40.

---

[2] The victim's sister testified that the victim was working at the bar, that the two left together after the bar closed and became involved in an argument while the sister was driving them home. T. at 391–93. The sister further testified that she stopped the car after the victim punched her in the face during the argument, and that the two then exited the vehicle and shoved each other, after which point the victim walked away. T. at 392–93.

Police officers arrived at the hospital and spoke with the victim. T. at 338. A few days later, the victim reviewed hundreds of "mugshots" but was unable to identify her assailant. T. at 351–52.

In late 2008 or early 2009, Sheila Gentile, a senior forensic scientist with the Onondaga County Center for Forensic Science, performed a DNA analysis on samples from the rape kit, specifically cells identified on a vaginal swab recovered from the victim as well as on seminal fluid on the victim's underwear. T. at 515, 545–46. Gentile determined that the DNA profiles generated from the underwear were consistent with a mixture of the DNA from the victim and two unknown contributors, and the DNA profiles generated from the vaginal swab were consistent with the victim and one unknown contributor. T. at 548. Because the generated DNA profile was unknown, it was uploaded to CODIS. T. at 548–49.

In November 2018, Gentile was alerted to a CODIS "hit" related to the DNA profile generated from the vaginal swab and underwear of the victim. T. at 549–50. The alert identified petitioner as a match to the DNA profile, and indicated that he resided in Campbell, Florida. T. at 480–81, 549–50.

After Syracuse detectives were notified of the CODIS "hit" matching the profile developed from the victim's rape kit, Syracuse Police Detective Terell Irvine contacted law enforcement in Tampa, Florida and federal law enforcement authorities to determine petitioner's address. T. at 476–77, 479–80, 485–86. Irvine, who was accompanied by other Syracuse police investigators, then went to Tampa and, with the assistance of federal and local law enforcement authorities, located petitioner at an apartment complex. T. at 486–88. Upon exiting his apartment complex, petitioner was secured by handcuffs and transported to the Hillsborough County Sheriff's Office. T. at 488.

Once at the Hillsborough County Sheriff's Office, petitioner was placed in an interview room with an activated recording system. T. at 489. Detective Irvine testified that local police policy required arrestees to remain in restraints during interviews, but he adjusted the handcuffs for petitioner's comfort by moving them to the front of petitioner's body and loosening them. T. at 490, 511. Petitioner waived his Miranda rights and agreed to answer questions. T. at 493–94.

During the interview, petitioner told Irvine that he lived in Syracuse in 2008 and moved to Tennessee in July 2008. T. at 495. Irvine showed petitioner a photograph of the victim, which was taken at the hospital on June 7, 2008. T. at 496–97. Petitioner denied knowing the victim. T. at 496–97.

After petitioner was transported to Syracuse, New York, Sean Lynch, a Senior Investigator for the Onondaga County District Attorney's Office, obtained a buccal swab from petitioner pursuant to a court order. T. at 455–60. In August 2019, the swab was sent to the Onondaga County Center for Forensic Sciences for testing. T. at 456–60, 551. Gentile compared petitioner's DNA sample to the DNA profiles generated from the samples taken from the victim's vaginal swab and underwear and determined that petitioner was a contributor to the DNA profiles obtained from both the victim's underwear and vaginal swab. T. at 553–55, 557–59.

Petitioner did not call any witnesses at trial. Following deliberations, the jury convicted petitioner of first-degree rape. T. at 655.

**E. Petitioner's Post-Conviction Motion and Sentence**

Prior to sentencing, petitioner filed two counseled motions to set aside the verdict pursuant to New York Criminal Procedure Law ("CPL") § 330.30. SR at 398–99, 435–36.

Petitioner argued, among other things, that the DNA evidence connecting him to the victim should have been suppressed because, although law enforcement authorities in Florida lawfully obtained a sample of petitioner's DNA in connection with the rape investigation there, the sample was wrongfully entered into CODIS by Florida officials, in violation of petitioner's Fourth Amendment rights. SR at 398–455.[3] The People opposed petitioner's motion. SR at 479–86.

At petitioner's sentencing hearing on September 22, 2021, the trial court judge opened the proceeding by affording the parties an opportunity to present oral argument on the CPL § 330.30 motion. S. at 2–21. With respect to petitioner's contention that his DNA sample was wrongfully entered into CODIS by Florida officials, in violation of his Fourth Amendment rights, petitioner's trial counsel argued that under Florida law, a suspect's DNA is not supposed to be uploaded to CODIS unless the suspect is charged with a crime, and that the wrongful uploading of this material violates constitutional standards. S. at 6–8.

The trial court denied petitioner's argument on the grounds that petitioner's DNA was properly obtained in Florida and again later in New York. S. at 10–12. The court thereafter sentenced petitioner to a determinate prison term of twenty years, plus five years of post-release supervision. S. at 21.

**F. Petitioner's CPL § 440.10 Motion ("440 Motion")**

Before petitioner perfected his direct appeal, he filed a pro se motion to vacate the judgment pursuant to CPL § 440.10 wherein he raised the following arguments: (1) the Florida law that permitted authorities to seize his DNA and enter it into CODIS violated his Fourth Amendment rights; (2) his DNA was improperly collected by an investigator instead of

[3] Petitioner's trial counsel did not move to suppress the DNA evidence through a pre-trial motion.

a medical professional; and (3) his trial counsel was ineffective for failing to investigate the collection and use of his DNA, file a pre-trial motion to suppress the DNA evidence, and properly prosecute his appeal. SR at 1–29. The People opposed the motion, and petitioner filed a reply. SR at 30–47.

On May 25, 2022, Judge Cuffy, who also presided over the trial, denied petitioner’s 440 Motion. SR at 52. Specifically, petitioner’s first and second claims were denied as procedurally barred, based on a finding that petitioner’s constitutional challenge to the Florida statute under which his DNA was collected was record-based, and therefore had to be asserted on direct appeal. SR at 49–50. The court deemed the issue to be record-based because it was raised in petitioner’s post-conviction motion, argued by both petitioner and counsel at sentencing, and rejected by the court. SR at 50. The court also held that petitioner could raise his claim that his DNA was improperly taken by an investigator instead of a medical professional on direct appeal. SR at 50.

Finally, petitioner’s third claim was denied as meritless. SR at 50–51. The court held that petitioner failed to establish that his trial counsel was ineffective for failing to investigate the collection and use of his DNA or move to suppress the DNA evidence. SR at 50. In support of this determination, the court noted that petitioner’s trial counsel investigated petitioner’s DNA-related claims, included these claims in a written motion to set aside petitioner’s conviction, and argued in favor of the motion at sentencing. SR at 51. The court also noted that, because it considered and rejected counsel’s argument, a pre-trial motion to suppress the DNA evidence on the grounds advanced by petitioner in the 440 Motion would have had “little to no chance of success.” SR at 51. Thus, trial counsel could not be deemed ineffective for failing to file this pre-trial motion. SR at 51.

Petitioner sought leave to appeal the denial of his 440 Motion, which the People opposed. SR at 53–167. The Appellate Division denied the application. SR at 168.

**G. Direct Appeal**

Petitioner filed a counseled brief in the Appellate Division, Fourth Department, arguing, among other things, as follows: (1) petitioner's state speedy-trial rights under CPL § 30.30 were violated because the People's "illusory" certificates of compliance failed to disclose impeachment materials consisting of the disciplinary records of police witnesses; (2) petitioner was denied his constitutional right to a fair trial because the court allowed the jury to observe him in handcuffs and leg shackles during his videotaped police interview, which prejudiced his defense; (3) trial counsel was ineffective for failing to (i) object at trial to the introduction of the videotaped police interview, (ii) file a pre-trial motion to suppress the DNA evidence on the ground that the Florida police violated his Fourth Amendment rights by improperly collecting the DNA and entering it into CODIS, and (iii) object to the prosecution mischaracterizing evidence and arguing for consciousness of guilt during summation; (4) the verdict was against the weight of the evidence; and (5) the sentence was excessive. SR at 527–98. The People filed an opposing brief, and petitioner filed a counseled reply. SR at 599–663.

The Appellate Division unanimously affirmed the judgment of conviction. *People v. Brown*, 222 A.D.3d 1362, 201 N.Y.S.3d 817 (4th Dep't 2023); *see also* SR at 664–65. The court rejected petitioner's claim that his speedy trial rights were violated based on an "illusory" certificate of compliance and noted that the disclosure requirement did not include disciplinary records of the law enforcement officials when the original certificate of compliance was filed because at that time, such records were shielded from disclosure by

former Civil Rights Law § 50-a, which was later repealed. SR at 664. The court further explained that the People's disclosure of the disciplinary records after the repeal of former Civil Rights Law § 50-a, and supplemental certificate of compliance, did not invalidate the original certificate of compliance because petitioner failed to establish a lack of good faith or due diligence by the prosecution. SR at 664–65.

Next, the Appellate Division rejected as unpreserved petitioner's claim that he was denied a fair trial when portions of the video of his police interview, shown to the jury, depicted him in handcuffs and shackles. SR at 665. The court also declined to review the claim as a matter of discretion in the interest of justice. SR at 665.

The Appellate Division also rejected petitioner's arguments that the verdict was against the weight of the evidence and his sentence was unduly harsh. SR at 665.

Finally, the court stated that it had "considered [petitioner's] remaining contentions and conclude[d] that none warrants reversal or modification of the judgment." SR at 665.

Petitioner filed a counseled application seeking leave to appeal, asking the Court of Appeals to review only his claim that his state statutory speedy-trial rights were violated by the People's filing of certificates of compliance that failed to disclose the disciplinary records of police witnesses. SR at 666–71.[4] The People opposed the leave application. SR at 672–74. On April 30, 2024, the Court of Appeals denied leave. *People v. Brown*, 41 N.Y.3d 982 (2024); SR at 675.

Thereafter, petitioner filed a pro se petition for a writ of certiorari to the United States Supreme Court, asking the Court to review his claim that the Florida police violated his Fourth

[4] Counsel also argued that the disciplinary records that were disclosed failed to include sufficient details for petitioner's trial counsel to properly cross-examine a police witness, in violation of petitioner's right to confrontation and to present a defense. SR at 670–71.

Amendment rights by collecting his DNA and entering it into CODIS without charging him with a crime. SR at 676–88. The Supreme Court denied the petition on October 7, 2024. *Brown v. New York*, 145 S. Ct. 308 (2024); SR at 689.

## III. THE PETITION

Petitioner argues that he is entitled to federal habeas relief because (1) his right to a speedy trial was violated through the prosecution's declarations of trial readiness, which were illusory; (2) his trial counsel was ineffective for failing to (i) object to the admission of the videorecording of petitioner's police interview, which showed petitioner in shackles, and (ii) file a pre-trial motion to suppress certain DNA evidence on Fourth Amendment grounds; and (3) the verdict was against the weight of the evidence. Pet. at 5–12.[5]

## IV. DISCUSSION

### A. Exhaustion Requirement

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. §§ 2254(b)(1)(A), (B)(i), (ii). "The exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and

[5] In his Amended Reply, petitioner "concede[s]" that (1) his state law speedy trial claim is not cognizable on federal habeas review, (2) his ineffective assistance of trial counsel claim based on the failure to object to the introduction of the videorecording of petitioner's police interview is unexhausted and procedurally defaulted, and (3) his weight-of-the-evidence claim is not cognizable on federal habeas review. *See* Amended Reply at 3–8. Petitioner further states that he would "like to withdraw" the aforementioned three claims in the event the Court finds these claims to be unexhausted and procedurally defaulted. *Id.* While the Court acknowledges petitioner's reply and request, for the sake of completeness, the Court will still consider whether such claims were cognizable and properly exhausted.

prevent disruption of state judicial proceedings[.]'" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief "in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted); *Fama v. Comm'r. of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000). In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of his or her claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985); *Barton v. Fillion*, No. 03-CV-1377, 2007 WL 3008167, at *5 (N.D.N.Y. Oct. 10, 2007). "[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

**B. Standard of Review Governing Exhausted Claims**

Under the AEDPA, a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state

court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180–81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120–21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 567 U.S. 37 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290,

301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473–74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).

### C. Ground One: Speedy Trial Claim

Petitioner contends that his right to a speedy trial was violated through the prosecution's declarations of trial readiness, which were illusory. *See* Pet. at 5.

Respondent argues that petitioner's speedy trial claim is not cognizable on federal habeas review because it is based on protections granted to him under state law. Resp. MOL at 10–11. In his Amended Reply, petitioner "concede[s]" that his state law speedy trial claim is not cognizable on federal habeas review. Amended Reply at 3. The Court agrees.

It is not the role of federal courts reviewing habeas petitions to re-examine the determinations of state courts on state law issues. 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Thus, to the extent the petition raises a state law speedy trial claim, it is not cognizable in a federal habeas petition. *See Harrison v. Thompson*, No. 20-CV-705, 2021 WL 1601281, at *8 (N.D.N.Y. Feb. 25, 2021) ("[T]o the extent petitioner now seeks to vindicate his speedy trial rights under the New York State Constitution, such state law claim is not cognizable in a federal habeas petition."), *report and*

*recommendation adopted by* 2021 WL 1599121 (N.D.N.Y. Apr. 23, 2021); *LaDuke v. Miller*, No. 24-CV-748, 2026 WL 1824999, at *5 n. 4 (N.D.N.Y. May 19, 2026) ("[T]he statement of readiness and whether it is illusory or not is a part of the state's C.P.L. § 30.30 speedy trial analysis." (citing *People v. Brown*, 28 N.Y.3d 392, 407 (N.Y. 2016))), *report and recommendation adopted as modified*, 2026 WL 1823337 (N.D.N.Y. June 24, 2026); *McCray v. Capra*, No. 15-CV-01129, 2017 WL 3836054, at *10 (N.D.N.Y. Aug. 31, 2017) ("[T]o the extent that [petitioner] raises speedy trial violations based on New York criminal procedural law, a state statutory protection, his claim is not cognizable on federal habeas review.") (collecting cases).

Respondent also argues that, insofar as the petition may be construed to assert a federal constitutional speedy trial claim, that claim is unexhausted, procedurally barred, and meritless. Resp. MOL at 11–16. The Court again agrees.

"It is well settled that a petitioner who raises only a statutory speedy trial claim pursuant to [CPL] § 30.30 has not invoked the federal constitution and therefore has not exhausted a federal claim." *Delvalle v. Sabourin*, No. 00-CV-3302, 2002 WL 1000968, at *3 (S.D.N.Y. May 16, 2002) (citing *Gonzalez v. Garvin*, No. 99-CV-11062, 2002 WL 655164, at *2 (S.D.N.Y. Apr. 22, 2002) ("[A]sserting a claim under section 30.30 does not call to mind a specific right protected by the constitution."), *Rodriguez v. Miller*, No. 96-CV-4723, 1997 WL 599388, at *2 (S.D.N.Y. Sept. 29, 1997) ("[A] CPL § 30.30 claim . . . has been held not to raise the federal constitutional speedy trial claim for purposes of a federal habeas petition."), and *Gibriano v. Attorney Gen. of N.Y.*, 965 F. Supp. 489, 491–92 (S.D.N.Y. 1997) (dismissing the petitioner's habeas petition in its entirety because the petitioner, who raised only a CPL § 30.30 claim in state court, did not raise a federal constitutional speedy trial claim in state

court)); *see also Walker v. Bennett*, 262 F. Supp. 2d 25, 30 (W.D.N.Y. 2003) ("A New York § 30.30 statutory claim is distinct from a Sixth Amendment speedy trial claim.").

Here, petitioner did not raise a Sixth Amendment speedy trial claim before the state court, but instead only raised a statutory speedy trial claim pursuant to CPL § 30.30. SR at 544–55 (Petitioner's Appellate Division Brief); SR at 646–55 (Petitioner's Appellate Division Reply Brief).[6] Further, petitioner did not mention a claim under CPL § 30.20 on direct appeal. SR at 544–55; SR at 646–55; *see also Chander v. Lee*, No. 17-CV-5919, 2022 WL 3369785, at *19 (E.D.N.Y. Aug. 16, 2022) (concluding that the petitioner's speedy trial claim was exhausted, even though the petitioner's brief to the Appellate Division relied exclusively on state law, because the Appellate Division construed the petitioner's brief to assert a claim under N.Y. CPL § 30.20, which embodies the federal constitutional speedy trial right), certificate of appealability denied, No. 22-2633, 2023 WL 7009626 (2d Cir. Apr. 12, 2023); *Parrish v. Lee*, No. 10-CV-8708, 2015 WL 7302762, at *12 (S.D.N.Y. Nov. 18, 2015) (explaining that raising a § 30.20 claim in state court "can exhaust a federal constitutional speedy trial claim" because "[§] 30.20 embodies the federal constitutional speedy trial right"). Thus, petitioner's Sixth Amendment speedy trial claim is unexhausted. *See, e.g.*, *Richardson v. Miller*, No. 22-CV-6606, 2024 WL 763395, at *16 (S.D.N.Y. Feb. 23, 2024) ("[The petitioner] did not alert the Court of Appeals to the constitutional nature of his speedy trial claims, and those claims are therefore unexhausted.").

---

[6] Petitioner's appellate counsel filed a letter application for leave to appeal the Appellate Division's affirmance of the judgment of conviction. *See* SR at 666–71. In the letter, counsel argued that the Appellate Division erred in its determination that the prosecution was not rendered untimely. SR at 666–71. The letter relies on the state law requirement that "the People must be ready for trial within 6 months of the commencement of the criminal proceeding (CPL 30.30 [1][a])" and contends that the People's Certificate of Compliance was invalid because it omitted certain disciplinary records of law enforcement witnesses. SR at 668–70. The letter does not contain any argument that the delay in petitioner's trial violated his federal constitutional speedy trial right.

Furthermore, because a federal speedy trial claim is record-based and petitioner has already perfected the state court appeal to which he is entitled, he cannot properly present this claim in a 440 motion.

Since petitioner has foreclosed his ability to exhaust this claim in state court, it is deemed exhausted but barred by procedural default. Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536–39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency.") (citation omitted).

To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (concluding that petitioner did not satisfy the cause and prejudice showing where he did not give any reason for failing to properly exhaust his federal claim in state court). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

In order to demonstrate prejudice, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to

his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see also Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (holding petitioner demonstrated prejudice and allowing his procedurally defaulted claim to proceed because "[t]he difference between a conviction for murder in the second degree and one for manslaughter is substantial, the former carrying a significantly higher potential term of imprisonment[, and] [t]hus, the submission of a depraved indifference murder charge to the jury, if the charge was in error, worked to Petitioner's 'actual and substantial disadvantage'").

Petitioner has not identified any cause for the default. In addition, petitioner has fallen short of presenting any "credible and compelling claims of actual innocence," otherwise necessary to excuse his procedural default. *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (citation omitted). Thus, petitioner's federal speedy trial claim is barred from habeas review because of his unexcused procedural default.

**D. Ground Two: Ineffective Assistance of Trial Counsel**

Petitioner contends that his trial counsel was ineffective for failing to (1) object to the admission of the video recording of his police interview, which showed him in shackles, and (2) file a pre-trial motion to suppress certain DNA evidence on Fourth Amendment grounds. *See* Pet. at 7.

**1. Failure to Object to Videorecording**

Respondent argues that this portion of petitioner's ineffective assistance of counsel claim is unexhausted. Resp. MOL at 16–18. In his Amended Reply, petitioner concedes that his claim that trial counsel was ineffective for failing to object to the admission of the video recording of his police interview is unexhausted and procedurally defaulted because the

argument was not raised in his leave application to the Court of Appeals. *See* Amended Reply at 3–4. For the sake of completeness, the Court notes that respondent and petitioner are both correct.

In his direct appeal, petitioner included his ineffective assistance of counsel claim based on his trial attorney's failure to object to the jury seeing him shackled in a video. SR at 572–85. However, the Fourth Department denied the claim because petitioner "failed to preserve [it] for [the Appellate Division's] review," and the Fourth Department "declined to exercise [its] power to review that contention as a matter of discretion in the interest of justice." *Brown*, 222 A.D.3d at 1363. In his counseled leave application to the Court of Appeals, petitioner did not raise this claim, arguing only that his state statutory speedy-trial rights were violated by the People's filing of certificates of compliance that failed to disclose the disciplinary records of police witnesses. SR at 666–71. Consequently, this ineffective assistance claim is unexhausted. *See, e.g.*, *Loucks v. Capra*, No. 16-CV-4227, 2019 WL 2330295, at *15 (S.D.N.Y. Apr. 22, 2019) (finding ineffective assistance of counsel claims unexhausted where petitioner presented them to the Appellate Division, but did not include them in his letter to the Court of Appeals), *report and recommendation adopted by* 2019 WL 2326225 (S.D.N.Y. May 30, 2019); *Frazier v. Lilley*, No. 18-CV-7240, 2020 WL 13561689, at *11–12 (S.D.N.Y. Nov. 12, 2020) (same), *report and recommendation adopted by* 2022 WL 4661999 (S.D.N.Y. Sept. 30, 2022).

Furthermore, because the claim is record-based and petitioner is only permitted to raise such claims once—in a direct appeal that has already concluded—petitioner cannot return to the state courts to exhaust his claim, rendering it also procedurally defaulted. *See Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these

claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals."); *Yates v. Rivera*, No. 03-CV-1057, 2007 WL 2027284, at *13 (N.D.N.Y. July 9, 2007) ("Moreover, since New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal . . . petitioner could not now properly raise this claim, which is based upon the record, in an Article 440 motion.") (internal quotations and citations omitted).

Since this ineffective assistance claim is procedurally defaulted, it cannot be reviewed unless petitioner establishes cause for the default and prejudice or actual innocence. *See Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

Insofar as the petition may be construed to argue that petitioner's appellate counsel was ineffective for not raising this ineffective assistance claim in petitioner's leave application, *see* Pet. at 12—an argument petitioner seemingly abandons in his Amended Reply by conceding the default and seeking permission to withdraw the claim—appellate counsel's decision not to include this claim in the leave application does not satisfy the cause requirement because an ineffective assistance of appellate counsel claim must first be exhausted in the state courts as an independent claim before it may be used to establish cause for a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). Petitioner never raised an ineffective assistance of appellate counsel claim in any state court filing before filing his petition.

Moreover, petitioner cannot establish prejudice because the claim itself is plainly meritless. At trial, Detective Irvine testified that petitioner voluntarily participated in the police interview, and petitioner was placed in restraints during his interview in Florida pursuant to

local police department policy, which mandated that the restraints remain in place during the interview. T. at 489–90, 511. Detective Irvine's testimony clarified that the restraints had no relationship to petitioner's likelihood of guilt or innocence, and petitioner has not persuasively argued otherwise. Thus, petitioner has failed to show a reasonable probability that an objection would have resulted in the court restricting the jury's ability to view the video.[7] Finally, because the primary evidence connecting petitioner to the sexual assault against the victim was his DNA, he cannot show that the outcome of the trial would have been different if the jury heard only the audio of the police interview.[8]

Accordingly, petitioner's ineffective assistance claim based on trial counsel's failure to object to the introduction of the video recording of petitioner's police interview is procedurally barred.

**2. Failure to Move to Suppress DNA Evidence**

Respondent argues that petitioner's ineffective assistance of counsel claim based on trial counsel's failure to move to suppress DNA evidence is also unexhausted because petitioner failed to raise this argument in his leave application. Resp. MOL at 16–18.

Respondent is correct that, after the Appellate Division denied petitioner's ineffective assistance claims on the merits in his direct appeal, petitioner filed an application for leave to appeal wherein he raised an argument only about his state statutory speedy-trial rights,

---

[7] Although the Supreme Court has made clear that requiring a defendant to appear at trial in restraints is an "inherently prejudicial practice," *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986), this precedent is not directly applicable to a situation involving a pre-arraignment interview. Indeed, some of the concerns with allowing a defendant to appear during trial in shackles—such as creating the "unmistakable indication[]" that the defendant is "particularly dangerous or culpable," *id.* at 569—may not necessarily extend to the shackling of an individual during a police interview, particularly where, as here, the jury is informed that (1) the shackling occurred pursuant to a jail policy applied to all individuals who participate in a police interview, and (2) the interviewee voluntarily participated in the interview.

[8] As noted, petitioner has also fallen short of presenting any "credible and compelling claims of actual innocence" otherwise necessary to excuse his procedural default. *Hyman*, 927 F.3d at 656.

failing to present any ineffective assistance claim to the highest state court capable of hearing it. SR at 666–71. Thus, if that were the only time petitioner had presented this argument before the state courts, the Court would agree with respondent that the claim is unexhausted.

However, petitioner also raised the same claim in his 440 Motion, and petitioner argues that his ineffective assistance of counsel claim could be properly exhausted through this motion since it was based on matters outside of the record on direct appeal. *See* Amended Reply at 4–8. Petitioner's assertion is supported by the trial court's decision to specifically discuss the merits of the claim and not rely on CPL § 440.10(2)(a) when it disposed of the claim.[9] *See* Amended Reply at 4–5.

The Court agrees with petitioner. Indeed, the Second Circuit has made clear that, when determining questions of state procedural exhaustion, it is "bound by the grounds stated in the opinion." *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997). Accordingly, where a state court has explicitly denied a claim on its merits, there can be "no[] assum[ption] that the state court's decision rested on a procedural default without an explicit statement to that effect[.]" *Id.* Thus, petitioner's ineffective assistance claim was denied on the merits in the decision on petitioner's 440 Motion. *See, e.g.*, *Coello v. Bell*, No. 18-CV-4485, 2019 WL 2092596, at *12 (S.D.N.Y. May 14, 2019) ("Coello raised an ineffective assistance of trial counsel claim in his C.P.L. § 440.10 motion . . . and in his leave application to the Appellate Division. . . . His C.P.L. § 440.10 motion was denied on procedural grounds pursuant to C.P.L. § 440.30(4)(d) and on the merits. . . . Thus, Coello's ineffective assistance of trial counsel claim is exhausted, and it is not subject to any state procedural bars (nor does

[9] CPL 440.10(2)(a) provides as follows: "Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue[.]"

respondent contend otherwise)."), *report and recommendation adopted by* 2020 WL 2792986 (S.D.N.Y. May 28, 2020).

Finally, petitioner contends that exhaustion was successfully achieved when the Appellate Division denied his application for leave to appeal, as petitioner had presented his claim to the highest court available. Amended Reply at 4–8. Petitioner is correct. *See Black v. Griffin*, No. 15-CV-8112, 2019 WL 2551685, at *16 (S.D.N.Y. Jan. 14, 2019) ("Petitioner exhausted his ineffective-assistance claims by raising them in his Section 440.10 motion, as well as in his application for leave to appeal to the Appellate Division from the denial of that motion by the trial court."), *report and recommendation adopted by* 2019 WL 2548132 (S.D.N.Y. June 20, 2019). Furthermore, the fact that petitioner presented his claim to the state courts in two separate procedural vehicles is of no consequence.[10]

In sum, to successfully exhaust his ineffective assistance of counsel claim based on trial counsel's failure to move to suppress DNA evidence, petitioner did not have to do so through his direct appeal, as he had already secured the state court's full review through his 440 Motion. *See Ramos v. Superintendent, Sing Sing Corr. Facility*, No. 11-CV-4929, 2014 WL 243148, at *5 (S.D.N.Y. Jan. 22, 2014) (claim was properly exhausted where, even though petitioner did not exhaust claim on direct appeal, he raised it in a CPL § 440 motion, the state court denied the claim on the merits, and petitioner sought leave to appeal from the

[10] When petitioner raised this ineffective assistance of trial counsel claim in his 440 Motion, his direct appeal was still pending. Both the Appellate Division and the county court decided the claim on the merits. Thus, petitioner presented the same ineffective assistance of counsel claim in both a collateral and direct attack of his state court conviction. Although petitioner only included the claim in his application for leave to appeal the denial of his 440 Motion, which was also denied by the Appellate Division, the only question before this Court is whether petitioner's federal claim was presented to the state court system and subjected to a full cycle of review, which it was. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

Appellate Division). Accordingly, the Court will consider the merits of this ineffective assistance of counsel claim.

Turning to the merits of this claim, "[t]he Sixth Amendment guarantees the right to effective representation on direct appeal." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015). However, to ensure "[a] fair assessment of attorney performance . . . [given] the distorting effects of hindsight . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689 (1984). To rebut the presumption and establish that counsel was constitutionally ineffective, a petitioner must demonstrate (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687.

To prove deficiency, "a person . . . must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). Under the second prong, "a [petitioner] must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. An ineffective assistance of counsel claim must be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (explaining courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. When

evaluating an ineffective assistance claim on habeas review, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect[,] but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro*, 550 U.S. at 473) (internal quotations omitted). Therefore, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

"Where an ineffective assistance of counsel claim is premised on counsel's failure to make a suppression motion, a showing of prejudice under *Strickland* requires that the underlying suppression claim was 'meritorious' and that 'there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" *Parisi v. Artus*, No. 08-CV-1785, 2010 WL 4961746, at *6 (E.D.N.Y. Dec. 1, 2010) (quoting *Maldonado v. Burge*, 697 F. Supp. 2d 516, 525 (S.D.N.Y. 2010)) (additional citations omitted).

In this case, the trial court expressly held, in denying petitioner's 440 Motion, that a pretrial motion to suppress the DNA evidence on the grounds advanced by petitioner would have had "little to no chance of success" because petitioner's DNA was properly collected, retained, and entered into a database in Florida, and properly obtained in New York. SR at 51. Accordingly, given the state court decision on the merits, petitioner must surpass the doubly deferential standard outlined above.

Petitioner has not presented any credible basis for this Court to conclude that the state court's decision was unreasonable. Nor could he do so since Florida law enforcement

officials had a presumably valid warrant for petitioner's DNA sample.[11] Moreover, the Supreme Court has made clear that once a buccal swab has been lawfully obtained, uploading the DNA records to a national database is permissible under the Fourth Amendment. *See Maryland v. King*, 569 U.S. 435, 464–65 (2013) (finding that statute authorizing collection of DNA from an arrestee through a buccal swab did not violate arrestee's Fourth Amendment rights, and the addition of the sample to CODIS also did not intrude on arrestee's privacy in a way that would make his DNA identification unconstitutional in light of the statutory protections against invasions of privacy). Thus, uploading petitioner's DNA to CODIS while he was a suspect in a crime cannot be deemed a violation of his Fourth Amendment rights. *See also United States v. Amerson*, 483 F.3d 73, 76–77, 86–87 (2d Cir. 2007) ("We acknowledge that the DNA profile of appellants will be stored in CODIS, and potentially used to identify them, long after their status as probationers—and the reduced expectation of privacy that such a status involves—has ended. But we do not believe that this changes the ultimate analysis. For we have upheld, in the past, the retention and use of information properly collected under the Fourth Amendment, if there was a strong enough public interest in retaining it, when there no longer was a diminished expectation of privacy. In particular, it is well established that the state need not destroy records of identification—such as fingerprints, photographs, etc.—of convicted felons, once their sentences are up."); *Johnson v. Quander*, 440 F.3d 489, 499 (D.C. Cir. 2006) (holding that once an initial DNA sample has been lawfully obtained, "the government's storage and use of it does not give rise to an independent Fourth Amendment claim"); *Leslie v. City of New York*, No. 22-CV-2305, 2026 WL 798145, at *9 (S.D.N.Y. Mar. 20, 2026) ("[T]he creation and indexing of DNA

[11] Petitioner never challenged the propriety of the warrant.

profiles is, in general, constitutionally permissible. A separate but related question remains: whether law enforcement's comparison of a lawfully obtained DNA profile against other profiles in a database constitutes an independent search requiring its own constitutional justification. Established precedent indicates that it does not."); *Morales v. Sec'y, Dep't of Corr.*, No. 21-CV-1846, 2024 WL 3540328, at *12–13 (M.D. Fla. July 25, 2024) ("As the court explained at the outset of its analysis, the fact that Defendant's DNA profile was collected pursuant to an unprosecuted arrest does not preclude law enforcement from storing his DNA profile in CODIS for further comparison. . . . Before trial, the prosecutor moved to compel a buccal swab from Morales, and the trial court granted the prosecutor's motion. . . . At trial, the prosecutor introduced into evidence a DNA match based on Morales's DNA from the buccal swab. . . . Because the prosecutor did not introduce into evidence the DNA match based on Morales's DNA in the CODIS database, Morales could not demonstrate a reasonable probability the outcome at trial would have changed if trial counsel had moved to suppress the match. . . . To the extent that Morales asserts that trial counsel deficiently performed by not moving to exclude the DNA match based on Morales's DNA in the CODIS database to support the suppression of his arrest, the claim is meritless[.]").

Furthermore, petitioner's DNA was identified as a match to the samples taken from the rape kit of the victim in this case three days before the Florida investigation was closed. *See* SR at 445–46, 451. After petitioner was identified as a suspect in this case, a Senior Investigator for the Onondaga County District Attorney's Office obtained a buccal swab from petitioner pursuant to a court order, and the DNA profile from that swab tied petitioner to the crime against the victim in this case. T. at 455–60, 551, 553–55, 557–59.

Simply put, petitioner's underlying suppression claim would not have been meritorious. Therefore, the state court's application of *Strickland*, determining that trial counsel's performance was not deficient, as there was no reasonable probability that the verdict would have been different if trial counsel moved to suppress petitioner's DNA stored in the CODIS database, was reasonable. *See, e.g.*, *Campbell v. Lee*, No. 11-CV-7737, 2016 WL 6892766, at *4 (S.D.N.Y. Nov. 21, 2016) (trial counsel was not ineffective for failing to move to suppress DNA evidence where the motion would not have been successful); *Maldonado v. Burge*, 697 F. Supp. 2d 516, 543–44 (S.D.N.Y. 2010) (counsel was not ineffective for failing to move to reopen the hearing to suppress the lineup identification because there was no reasonable probability of success of the motion); *Collins v. Beaver*, No. 03-CV-0416, 2005 WL 1801603, at *12 (S.D.N.Y. July 27, 2005) (counsel was not ineffective for failing to raise denial of petitioner's suppression motion on appeal where counsel had "no reason to believe" that the claim would succeed).

Accordingly, petitioner's request for habeas relief on ineffectiveness grounds, based on trial counsel's failure to move to suppress DNA evidence, is also denied.

**E. Ground Three: Weight of the Evidence**

Respondent argues that petitioner's claim that his conviction was against the weight of the evidence cannot provide him with any relief. Resp. MOL at 23–25. The Court agrees. The law is well settled that habeas claims challenging the weight of the evidence supporting a conviction involve issues of state law only and are therefore not cognizable on habeas review. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.") (citing cases); *Maldonado*

*v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996); *Mayrant v. Wolcott*, No. 20-CV-9324, 2025 WL 2106654, at *11 (S.D.N.Y. July 28, 2025); *Williams v. McCarthy*, No. 9:21-CV-00993, 2025 WL 949746, at *3 (N.D.N.Y. Mar. 28, 2025); *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 360 (N.D.N.Y. 2013) ("It is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding."). Accordingly, petitioner's request for habeas relief on the grounds that the weight of the evidence did not support his conviction is denied.

Furthermore, petitioner's direct appeal involved challenges to the weight of the evidence, not the legal sufficiency of the evidence. *See* SR at 527–98; SR at 640–63. The Appellate Division also addressed petitioner's arguments as presenting challenges only to the weight of the evidence. *See People v. Jima*, 222 A.D.3d 1362, 201 N.Y.S.3d 817 (4th Dep't 2023); *see also* SR at 664–65.[12]

"In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982). Here, the Appellate Division rejected petitioner's weight of the evidence claim, "without any mention of the standards governing the sufficiency of the evidence." *See Pham v. Kirkpatrick*, 209 F. Supp. 3d 497, 513 (N.D.N.Y. 2016), *aff'd*, 711 F. App'x 67 (2d Cir. 2018). Thus, petitioner did not "fairly present a legal sufficiency claim in state court[.]" *Id.* (quotation marks omitted). Accordingly, even if the Court were to liberally construe petitioner's weight of

[12] Although a "weight-of-the-evidence" claim and a "legal sufficiency" claim are related, they have different standards. *See Romero v. Miller*, No. 18-CV-381, 2019 WL 5743500, at *5 (N.D.N.Y. Apr. 18, 2019), *report and recommendation adopted by* 2019 WL 5703612 (N.D.N.Y. Nov. 5, 2019).

the evidence claim as a cognizable sufficiency of the evidence claim, it would be unexhausted and procedurally barred.

Additionally, because a legal sufficiency claim is based on matters on the record, petitioner cannot now return to state court to present a sufficiency-of-the-evidence claim. *See, e.g.*, *Jones v. Miller*, No. 22-CV-1203, 2025 WL 1294635, at *15 (N.D.N.Y. May 5, 2025) ("Petitioner cannot now return to state court to present his sufficiency-of-the-evidence claim because he has already taken his one appeal and applied for leave to appeal to the New York State Court of Appeals." (citing *Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir. 1991))). Thus, any intended legal sufficiency claim is procedurally defaulted. *See Ramirez v. Attorney General*, 280 F.3d 87, 94 (2d Cir. 2001); *Grey*, 933 F.2d at 120–21.

Furthermore, petitioner has not made the required showing of cause for the default and, for the reasons discussed above, petitioner cannot establish a gateway actual innocence claim necessary to overcome the procedural bar to having his defaulted claim addressed by this Court. *See Kimbrough*, 949 F. Supp. 2d at 361 ("Petitioner has not attempted to establish either cause for his procedural default or that he would be prejudiced should his claim not be reviewed. . . . Further, . . . petitioner has made no showing that he is actually innocent of the underlying criminal charges at issue in this case.").

Accordingly, petitioner's request for habeas relief on the basis of legal sufficiency is also denied.

## V. CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the petition, Dkt. No. 1, is **DENIED and DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[13] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order upon the parties in accordance with the Local Rules.

DATED: November, 2, 2026

Albany, NY

Lawrence E. Kahn
Senior U.S. District Judge

[13] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").